UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                                :
UNITED STATES OF AMERICA,                                       :
                                                                :
            -against-                                           :    **MEMORANDUM**
                                                                :    **DECISION AND ORDER**
                                                                :
GABRAL SAMMY,                                                   :    15-CR-259 (BMC)
                                                                :
                                Defendant.                      :
                                                                :
                                                                :
-------------------------------------------------------------- X

**COGAN,** District Judge.

Defendant is charged with illegal re-entry following deportation. Before me is his motion to dismiss the indictment pursuant to 8 U.S.C. § 1326(d) and Federal Rule of Criminal Procedure 12 on the ground that his prior deportation, the predicate for the crime with which he is now charged, was unlawful. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

Defendant was born in 1992 in London, England to Ethiopian nationals. He, along with his family, lawfully entered the United States in 1997 pursuant to a P-4 class non-immigrant visa. It appears that the family extended their lawful stay in the United States until 1999, but at some point their visa status expired and they remained in the country. In 2004, defendant's mother sought and received asylum, and defendant was extended the status of asylee under 8 U.S.C. § 1158(c)(1). Defendant received status as a lawful permanent resident in 2007. During what has been described by defendant as his "troubled" teenage years, due at least in part to domestic issues, learning impairments, and substance abuse, defendant was arrested frequently. This culminated in December 2012 with an arrest and subsequent felony indictment in Virginia under Va. Code § 18.2-51, which is defined as follows:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

Defendant pleaded guilty to the Class 3 felony for the offense of "Malicious Bodily Injury" in violation of Va. Code § 18.2-51 and was sentenced to 6 years, of which all but one year and nine months was suspended ("Virginia felony").

Immigration and Customs Enforcement ("ICE") took custody of defendant on or about June 20, 2014, and filed a charge of deportability with the immigration court on or about June 24, 2014, in the form of a Notice to Appear, Form I-862 ("NTA"). Of significance to this motion, the NTA alleged that defendant was removable on the basis of two convictions: one for misdemeanor Petit Larceny from January 2012, and the Virginia felony. The NTA alleged that these convictions supported two grounds for deportability under the Immigration and Nationality Act ("INA"). Defendant was allegedly deportable because the two convictions were crimes of "moral turpitude not arising out of a single scheme of criminal misconduct," 8 U.S.C. § 1227(b)(2)(A)(II). Separately, because the Virginia felony was an "aggravated felony," and specifically a "crime of violence" under 8 U.S.C. § 1101(a)(43)(F), that conviction triggered deportability under 8 U.S.C. § 1227(b)(2)(A)(iii).

Defendant appeared *pro se* before the Immigration Judge ("IJ") in July 2014. He was informed of his right to an attorney, and asked whether he wanted to proceed without an attorney. Defendant, acknowledging that he had received the list of free attorneys, elected to speak without a lawyer; the IJ stated that defendant should tell him if defendant changed his mind. The IJ then proceeded to ask him factual questions regarding his citizenship and the convictions. Upon defendant's affirmation that the two convictions, noted above, were separate situations, the IJ found that it appeared defendant had been convicted of two or more crimes

involving moral turpitude, and sustained that charge. The IJ then recited the second ground for deportation, that defendant's conviction for the Virginia felony was an aggravated felony because it was a crime of violence with a sentence of one year or greater, and the IJ also sustained that charge. The IJ then stated that defendant could apply for relief, adding, "but I'm not sure there's much you can apply for. With an aggravated felony conviction, about the only thing you could apply for is if you, uh, were afraid you'd be tortured in the United Kingdom. You sure you don't want to talk to a lawyer?" Defendant responded, "no, sir" but then asked instead if he could apply for "cancellation of removal, if like all my family's here and I have no family in London?"

Defendant was apparently referring to relief under 8 U.S.C. § 1229b(a), whereby certain lawful permanent residents who have not been convicted of an aggravated felony may show that they do not merit deportation despite convictions for removable offenses. The IJ responded, "no, because it's an aggravated felony." Defendant responded that he did not want to stay in jail any more, and therefore would sign his deportation order, which he (and the IJ) presumed would be to the United Kingdom. The proceeding leading to the IJ's oral decision lasted approximately four minutes.

The IJ's oral decision thereafter concluded that the Virginia felony was an aggravated felony because it was (1) a crime of violence and (2) defendant served over one year imprisonment. The IJ stated on the record that defendant had not applied for relief under the Convention Against Torture, and ordered him deported to the United Kingdom. The IJ then informed defendant of his right to appeal to a higher court, and asked defendant if he would like to appeal the decision to the Board of Immigration Appeals ("BIA"). Defendant stated that he did not. The IJ then warned defendant that he could not come back to the United States and that,

if he came back without permission, he would be committing a very serious crime, which could lead to a jail sentence of up to twenty years.

Defendant ultimately was not deported to the United Kingdom. Instead, defendant remained in detention due to problems confirming defendant's U.K. citizenship with the British Embassy. According to defendant's affidavit, a deportation officer secured defendant's signature on an application for a travel document to Ethiopia while also assuring him that he would be deported to the United Kingdom.

In January 2015, defendant's counsel, who had been retained by defendant's mother, filed for a stay of deportation. This motion was granted, and the deportation was stayed for roughly one month, provided that defendant had to move to reopen his case during that period. Instead of filing to reopen his case, however, defendant decided, against the advice of counsel, that he would not seek any form of protection available. Defendant's affidavit states that this was because, during this time, a deportation officer told defendant that he was wasting his time but would be "locked up" for "maybe a year" while he applied for asylum.

Defendant was deported to Ethiopia on March 9, 2015. On April 29, 2015, defendant was stopped by Customs and Border Protection at JFK airport after disembarking from a flight from Dubai. On May 26, 2015, defendant was indicted on one count of unlawful re-entry after deportation subsequent to a conviction of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). Defendant has entered a plea of not guilty, and now moves to dismiss the indictment with prejudice based on due process violations in the underlying deportation process.

**DISCUSSION**

An alien who has been deported and who returns to the United States unlawfully is subject to a monetary fine, not more than two years' imprisonment, or both. See 8 U.S.C. § 1326(a). However, because defendants' removal was subsequent to a conviction for commission of an aggravated felony, defendant faces potential criminal penalties of a fine, up to 20 years' imprisonment, or both. See 8 U.S.C. § 1326(b)(2).

Dismissal of an indictment is an "'extraordinary remedy,' reserved only for limited circumstances implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001). In moving to dismiss the indictment here, defendant may collaterally attack the validity of the underlying deportation on the basis that his prior deportation order was obtained in violation of his rights. See United States v. Copeland, 376 F.3d 61 (2d Cir. 2004) (citing United States v. Mendoza-Lopez, 481 U.S. 828 (1987)). To do so, a defendant must demonstrate that (1) he "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). Defendant must establish each of these elements; failure to establish any one forecloses collateral attack and dismissal of the indictment on the basis of the invalidity of the underlying deportation order. See United States v. Fernandez-Antonia, 278 F.3d 150 (2d Cir. 2002).

Defendant attempts to establish all three elements on the basis that the IJ erroneously found that the Virginia felony was an "aggravated felony" under the INA and, as a result, told defendant that he was not eligible for cancellation of removal. Due to this affirmative misstatement to defendant, defendant argues that he unknowingly and unintelligently waived his

right to appeal, was effectively deprived of judicial review of the deportation proceedings, and suffered prejudice from the fundamentally unfair proceedings. The Government, by contrast, alleges that the IJ correctly found that the Virginia felony was an "aggravated felony" under the INA and that, even if the IJ erred in so finding, defendant cannot establish all three elements so as to be successful in his collateral attack.

An aggravated felony is defined as "a crime of violence . . . for which the term of imprisonment [is] at least one year." 8 U.S.C.A. § 1101(a)(43)(F). A "crime of violence," in turn, is defined under 18 U.S.C. § 16 as follows:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The Supreme Court has explained: "When the Government alleges that a state conviction qualifies as an 'aggravated felony' under the INA, we generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA." Moncrieffe v. Holder, __ U.S. ___, 133 S. Ct. 1678, 1684 (2013). The categorical approach presumes that the conviction rested upon nothing more than the least of the acts criminalized to determine whether even those acts are encompassed by the generic federal offense. Id. (citing Johnson v. United States, 559 U.S. 133, 130 S. Ct. 1265 (2010)). According to defendant, the Virginia felony does not meet the definition for a crime of violence because the least criminalized act under that statute does not require "the use, attempted use, or threatened use of physical force" of subsection (a) of 18 U.S.C. § 16, and the language in subsection (b) is materially indistinguishable from the residual clause under the Armed Career Criminal Act, which was struck down by the Supreme Court in Johnson v. United States, __ U.S. ___, 135 S. Ct. 2551

6

(2015). Johnson has since been relied upon by three Circuits in striking down the same clause of subsection (b) of § 16. See United States v. Gonzalez-Longoria, 813 F.3d 225 (5th Cir. 2016); United States v. Vivas-Ceja, 808 F.3d 719 (7th Cir. 2015); Dimaya v. Lynch, 803 F.3d 1110 (9th Cir. 2015).

Assuming, *arguendo*, that the Virginia felony was not an aggravated felony under the INA, defendant nonetheless falls short in his attempt to collaterally attack the deportation order. Defendant argues that this error led the IJ to affirmatively misstate the relief for which defendant was eligible. In turn, defendant asserts that the effects of the IJ's errors satisfy each element required to successfully attack his indictment. However, even were I to find that the Virginia felony did not categorically satisfy the INA's definition of aggravated felony because it was not a crime of violence under § 16 – which would require finding not only that the Virginia felony does not require "the use, attempted use, or threatened use of physical force," but also that subsection (b) is, after the Supreme Court's recent decision in Johnson, unconstitutionally vague and applicable retroactively – the inquiry would not stop there. Each element required to successfully collaterally attack the indictment requires an additional finding, and defendant cannot meet his burden as to all three elements.

First, in order to meet the exhaustion requirement, I must conclude that defendant is excused from his failure to exhaust his administrative remedies. Doing so would require me to find, in addition to the aforementioned finding regarding the Virginia felony, that defendant would have appealed had he thought there was any opportunity for relief and, therefore, defendant's waiver of appeal was not knowing and voluntary. See United States v. Gomez-Hernandez, 777 F. Supp. 2d 464, 470 (E.D.N.Y. 2011) (finding defendant was excused from exhausting administrative remedies where waiver of his right to appeal to the BIA was not

knowing and intelligent because the IJ provided defendant with "misleading information"). I must consider what defendant would have done at the time, had the IJ not misstated the law.

Likewise, the fundamental unfairness element is not satisfied merely because the legal error and resulting misstatement of available remedies may have made the entry of the deportation order fundamentally unfair. I must make the additional finding that defendant has shown that he was prejudiced by the fundamental error. See Copeland, 376 F.3d at 72 ("[D]enial of an established right to be informed of the possibility of such relief can, *if prejudicial*, be a fundamental procedural error.") (emphasis added); United States v. Sosa, 387 F.3d 131, 138 (2d Cir. 2004) (finding IJ failed to inform Sosa of his right to seek discretionary relief and "therefore committed error 'of a fundamental nature'"). This would require me to find, in addition to finding that the Virginia felony was not an aggravated felony under the INA, that there was a "reasonable probability" that, "but for the error, the result of the proceeding would have been different." United States v. Daley, 702 F.3d 96, 100 (2d Cir. 2012). Here, it would require finding that there was a reasonable probability that defendant would have been granted discretionary relief. Such a finding requires me to step into the IJ's shoes at the time of the deportation proceeding to consider whether defendant would have been granted cancellation of removal, according to a multifactor analysis. See Sosa, 387 F.3d at 138.

I need not put myself in the shoes of defendant or the IJ, or even undergo the threshold analysis of whether the Virginia felony meets the definition of an aggravated felony under the INA.[1] The record evidences that defendant cannot satisfy the second element of his collateral

---

[1] It bears noting that Johnson, 135 S. Ct. 2551 (2015), had not been decided by the Supreme Court at the time of defendant's removal, or even at the time that defendant reentered the United States in April 2015. The analysis as to whether the IJ erred in finding the Virginia felony was an aggravated felony under the INA, and the effects, if any, of that error, may also be affected by the fact that Johnson had no import at the time of defendant's deportation proceedings.

8

attack, because defendant cannot demonstrate that his deportation proceedings improperly deprived him of the opportunity for judicial review. Defendant attempts to argue that there was no realistic opportunity for judicial review because defendant was *pro se* and misled about available remedies; as support, he cites Calderon and United States v. Lopez, 445 F.3d 90 (2d Cir. 2006).

The time between deportation and removal may be a significant factor in determining whether judicial review is unavailable. See Calderon, 391 F.3d at 376 (judicial review not available in the one month between final deportation order and removal); Sosa, 387 F.3d at 138 (less than one month between final deportation order and deportation, with no attorney and no practical chance of finding an attorney); Gomez-Hernandez, 777 F. Supp. 2d at 471 (eleven days between final deportation order and deportation). However, "[w]hile the interval of time in which it is realistically possible for an alien to seek judicial review may be quite short where the alien has not received misinformation, the analysis differs where the government affirmatively misleads an alien about the availability of relief." Lopez, 445 F.3d at 99; see also United States v. Phillips, 120 F. Supp. 3d 263, 270 (E.D.N.Y. 2015) (absence of counsel, misinformation by IJ as to relief, denial on appeal by Board of Immigration Appeals, and "murky" state of the law weighed in favor of finding judicial review was unavailable). Still, "there is no precise cut-off for what interval of time is sufficient to be considered a 'realistic possibility.'" United States v. Thorpe, No. 15-CR-211, 2016 WL 676395, at *4 (E.D.N.Y. Feb. 18, 2016).

A court must therefore weigh the factors in each case to determine the impact of the IJ's statements, defendant's lack of representation, and the length of time between the deportation order and removal, and conclude whether judicial relief was realistically available. And, although there may be some overlap between the requirement of § 1326(d)(1) and (d)(3), see

Sosa, 387 F.3d at 136, defendant must show that the circumstances of his case deprived him of judicial review. See, e.g., United States v. Gill, 748 F.3d 491, 506 (2d Cir. 2014) (where more than seven years had passed between deportation hearing and deportation, case remanded to district court to determine "whether the combination of the BIA decision and bad legal advice from [the defendant's] lawyer deprived [him] of a meaningful opportunity for judicial review").

In the circumstances here, judicial review was available to defendant for months before he was deported. Even had defendant been misinformed about the availability of certain relief, the months between the final deportation order and his eventual removal gave defendant a realistic opportunity to seek review of the deportation order in the district court through his attorney. The deportation hearing occurred in July 2014, defendant's deportation order was made final in December 2014, and he was deported in March 2015.

Furthermore, after the deportation order was entered, defendant – at this point represented by an attorney – moved to stay the deportation proceedings and reopen his case. The stay was granted, but defendant, against the advice of counsel, moved to lift his stay and be deported to Ethiopia. Defendant cannot now state that he was misinformed as to the available relief where he received advice from counsel, took actions to seek available relief, but nevertheless chose to lift the stay against that advice.

Lastly, defendant argues that judicial relief was not available because habeas review was unavailable in 2014, and that judicial review was unavailable because he had not exhausted his administrative remedies and was time barred from doing so. It would be illogical to conclude that defendant, after having been deported and reentering illegally, is now excused from exhausting his administrative remedies, but that he would not have been excused from doing so during the eight months between the deportation order and his removal. Again, this is

particularly difficult to accept where defendant was represented by an attorney, actions had been undertaken on his behalf, and defendant nonetheless chose to abandon that avenue and sign the deportation papers to Ethiopia. Therefore, defendant has not shown that he was deprived of the opportunity for judicial review.

It appears from the audio of the removal hearing, and from reviewing defendant's own affidavit, that defendant was seeking, understandably, to be released from prison as soon as possible, and therefore did not want to appeal or move to reopen if it meant he would remain in custody any longer. However, that desire does not excuse defendant from raising valid claims before the administrative agency and the district court when he had the opportunity and had been counseled by his attorney to seek relief.

## CONCLUSION

Defendant's motion to dismiss the indictment is denied.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
May 3, 2016